UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LaVita H. Lykes                                                           Plaintiff

    v.                                                 No. 3:25-cv-368-BJB

Administrative Office of the                                             Defendant
Kentucky Courts

\* \* \* \* \*

## MEMORANDUM OPINION

LaVita Lykes previously worked as a "Deputy Clerk with the Jefferson County Office of Circuit Court Clerk." Letter from David L. Nicholson, Jefferson Circuit Court Clerk, to LaVita H. Lykes (Feb. 12, 2024) (filed by Lykes as DN 11-1 at 1). During her tenure, she says, she faced a campaign of "retaliation, harassment, intimidation, workplace bullying" and more "because of the fact" that she "[s]poke up against all of the 'wrong doing'" of her coworkers. Complaint (DN 1) at 6 (emphasis omitted). Eventually her "employment" was "[t]erminat[ed]" (by whom, the complaint leaves unclear). *Id.* at 5. And that, she says, amounted to a violation of federal employment laws forbidding sex and age discrimination. Complaint at 4.

Because Lykes sued *pro se* and as a pauper, her complaint was subject to initial screening under 28 U.S.C. § 1915(e) before summons issued against any of the Defendants. That review resulted in dismissal of the claims against several of her coworkers. Screening Order (DN 6) at 6–7. Now, all that remains is one Title VII retaliation claim against the Administrative Office of the [Kentucky] Courts. *See* Screening Order at 5 (citing 42 U.S.C. § 2000e-3(a)).

The Administrative Office of the Courts has moved for dismissal of that remaining claim. Success on that retaliation claim, it notes, would require Lykes to show not just retaliation but also that the AOC was her "employer." Motion to Dismiss (DN 12-1) at 5 (citing, *e.g.*, *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)); *see also Wathen v. General Electric Co.*, 115 F.3d 400, 404–05 (6th Cir. 1997) (discussing Title VII's "employer" requirement). *See generally* 42 U.S.C. § 2000e(b) (defining "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees"). And in the Administrative Office's view, Lykes has named the wrong Defendant: she worked not for the AOC but for the Jefferson Circuit Court Clerk. *See* Motion to Dismiss at 1.

To decide this motion, the Court must therefore determine whether Lykes's allegations support a "reasonable inference" that the Administrative Office employed

1

her.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That question, in turn, depends on "whether the alleged employer exercises control over the manner and means of the plaintiff's work," including through the "authority to appoint, hire, fire, and promote."  *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 612 (6th Cir. 2003); *accord Anwar v. Dow Chemical Co.*, 876 F.3d 841, 852 (6th Cir. 2017).

As a matter of law, the Administrative Office wields no such supervisory power over circuit clerks' employees.  "The Administrative Office of the Courts is created to serve as the staff for the Chief Justice" of Kentucky, KY. REV. STAT. § 27A.050, who serves as the "executive head" of the Kentucky Courts of Justice, § 27A.010.  The Chief Justice "in his sole discretion may delegate" some tasks to the AOC.  § 27A.020. *See also* KY. CONST. §§ 110(5)(b), 116.  Among these are "the supervision of clerical and administrative personnel," *Nance v. Kentucky Administrative Office of Courts*, 336 S.W.3d 70, 73 (Ky. 2011), and the creation of high-level HR policies and procedures.[1]

---

[1] Given the AOC's position within the Kentucky judicial org chart, plus the state law authorizing its functions, why is the AOC subject to federal Title VII litigation at all?  The Kentucky Supreme Court has stated (if not quite held) that the AOC lacks the capacity to be sued in any of Kentucky's inferior courts because the Office is "an inseparable part of the Office of the Chief Justice."  *Martin v. Administrative Office of Courts*, 107 S.W.3d 212, 214 (2003).  That structural arrangement raises the question whether and to what extent sovereign or judicial immunity insulates the Office from federal-court litigation.  True, that same court has also cited federal law for the proposition that the Supremacy Clause trumps whatever immunity the Office might otherwise enjoy under state law.  *See Miller v. Admin. Office*, 361 S.W.3d 867, 876 (Ky. 2011) (citing *Alden v. Maine*, 527 U.S. 706, 755–56 (1999)). But courts should hesitate to overread that blanket statement, given the contingent and contested relationship between federal civil-rights legislation and state sovereign immunity. *See, e.g.*, *City of Boerne v. Flores*, 521 U.S. 507 (1997).

Regardless, at least some personnel working in Circuit Clerks' offices may lie beyond the reach of federal employment law.  *See* 42 U.S.C. § 2000e(f) (excluding from Title VII's definition of "employee" "any person elected to public office in any State … or any person chosen by such officer to be on such officer's personal staff," at least so long as those persons are not "subject to the civil service laws of a State government").  And to the extent the AOC may be sued at all, it seemingly isn't subject to ordinary *state* employment law, either.  *See Barrett v. Administrative Office of the Courts*, 719 S.W.3d 467, 470–71 (Ky. 2025) (because the "AOC is a judicial branch agency," its HR staffers and other employees are not subject to legislative rules or executive-branch agencies like the Personnel Board); *In re Flynn*, 686 S.W.3d 193, 202 (Ky. 2024) (applying judiciary-specific personnel rules).

Whether these jurisdictional and interpretive questions might raise a barrier to relief in future cases is not something this Court must or even may decide to resolve Lykes's case. Despite the usual rule that federal courts must assure themselves of jurisdiction before entertaining a case's merits, the "order-of-operations issues" that arise when a defendant

But "it is not the Director of AOC who has termination authority for Court of Justice Employees. There is no grant of authority to the AOC Director beyond that which is delegated to him by the Chief Justice." *Id.* And by policy, the Chief Justice seems to have left that power to individual circuit clerks—who are chosen by the voters of each county, *see* KY. CONST. § 97. *See Nance*, 336 S.W.3d at 72 ("[T]he elected official is the appointing authority for employees in his or her office."). As the Kentucky Courts' personnel policies describe the situation, "[t]he elected official is the appointing authority for the KCOJ personnel assigned to his or her office." PERSONNEL POLICIES FOR THE KENTUCKY COURTS OF JUSTICE § 1.04(8) (2025). *See also id.* § 1.04(6) ("'Appointing authority' means an individual who has been delegated authority by the Chief Justice to act on behalf of an agency or office of the KCOJ with respect to appointments, position actions, payroll documents, leave requests, and disciplinary actions....").

Within a circuit clerk's office, in other words, it's "[t]he clerk" who has the power to "employ and dismiss … deputies and other employees." KY. REV. STAT. § 30A.050. So it's hard to see how the AOC would bear responsibility for any retaliation Lykes faced.[2] Certainly her factual allegations shine no light on this question. And as a matter of law, "the entity with hiring and firing authority is the right defendant." *DaSilva v. Indiana*, 30 F.4th 671, 674 (7th Cir. 2022). In this case, that would appear to be the Jefferson County Circuit Clerk.[3]

Of course, if Lykes alleged facts suggesting that the Administrative Office *did* actively supervise workers at the Jefferson County Circuit Clerk's Office, the Court would (at this stage) take those allegations as true. *See generally Iqbal*, 556 U.S. at 678. But Lykes does not. Most all the misconduct she describes concerns her coworkers—other employees of the Circuit Clerk. *See, e.g.*, DN 11-1 at 25 (discussing "the favoritism, unprofessional, unethical, and hostile work environment that seems to plague the Jefferson County Circuit Court Clerk Office"). And based on the documents she asks the Court to consider in response to the motion to dismiss, any adverse employment actions came at the hands of the Circuit Clerk himself.[4] The

---

*pleads* sovereign immunity aren't presented here—because the AOC hasn't invoked it. *Pichiorri v. Burghes*, 162 F.4th 745, 752 (6th Cir. 2025).

[2] The Court may consider personnel policies, like all public records, on a motion to dismiss. *See, e.g., Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

[3] No statutory or constitutional provision of which the Court is aware gives the Administrative Office the right to control the manner or means of circuit clerk staffers' work, either. And, again, Lykes hasn't addressed this.

[4] Lykes's two motions "for submission of … evidence," DNs 11 and 13, are premature—except insofar as this material bears on the sufficiency of her pleadings. Courts adjudicating motions to dismiss test the sufficiency of allegations, not evidence. *See, e.g., Stanley v. City of Sanford*, 606 U.S. 46, 49 (2025) ("on a motion to dismiss, we take as true the well-pleaded

reprimand letter she received was signed by an HR professional and sent on behalf of the Circuit Clerk. DN 11-1 at 1. When Lykes appealed that reprimand, she addressed her challenge to the Circuit Clerk's office. *Id.* at 4. The eventual decision to rescind that reprimand likewise came from the Circuit Clerk, *id.* at 7, apparently after he met with Lykes, *id.* at 6. Allegedly those two met on at least two other occasions. *See id.* at 8–9. And the Circuit Clerk eventually decided to place her on probation. *Id.* at 10.

By contrast, Lykes never alleges that the Administrative Office was really calling the shots. Instead, her allegations and documents appear to corroborate the statutes and Administrative Office policies cited above: circuit clerks make employment decisions within their offices, with limited de facto or de jure control by the AOC. Lykes traces no further connection between the actions of the Clerk and her coworkers at the Jefferson Circuit Clerk's Office and the actions of anyone working at the AOC. *Cf.* Complaint at 6 (attributing retaliatory conduct to the Office of the Circuit Court Clerk "management team" and the Circuit Clerk himself). Without this link, nothing supports an inference that the AOC employed her for Title VII purposes. And given that, Lykes's claim against that Defendant fails as a matter of law.[5]

---

facts in the plaintiff's complaint and do not consider evidence beyond that pleading") (citation omitted). "When a court is presented with a Rule 12(b)(6) motion," however, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here Lykes attached copies of correspondence between her and the Circuit Clerk, employment policy documents, and what appear to be her own notes about the process—as well as a series of photographs she took of her coworkers ostensibly slacking off. Recognizing that Lykes's extensive documentation lies at the heart of her theory of the case—and mindful of its obligation liberally to construe "a *pro se* complaint, however inartfully pleaded," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quotation marks omitted)—the Court considers the documents she has filed not as *evidence* but for the light they shed on the nature of Lykes's theory.

[5] That the initial screening addressed some but not all of Lykes's claim doesn't limit this Court's authority to consider the remaining Defendant's motion to dismiss. Screening "affords courts 'the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" *Lee v. Maye*, 589 F. App'x 416, 416 (10th Cir. 2015) (Gorsuch, J.) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Trial judges may nevertheless proceed to entertain arguments for dismissal that defendants later present. *See United States v. Dunbar*, 357 F.3d 582, 592–93 (6th Cir. 2004) (recognizing trial courts' authority "to reconsider … an issue previously decided in the case") (vacated on other grounds); *cf. Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment) ("Our adversary system is designed around

## ORDER

Because Lykes does not plausibly allege that the Administrative Office played a role in any retaliation she may have faced, the Court grants the AOC's motion to dismiss (DN 12) and dismisses Lykes's claim against that Defendant.

Benjamin Beaton, District Judge

United States District Court

June 11, 2026

---

the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief .").